UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-384 |
| | § | |
| JOHNELL LAVELL BARBER, II | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Johnell Lavell Barber, II's Motion to Suppress
Evidence. (Dkt. #46). The United States filed a response in opposition, (Dkt. #48), and
the Court held a hearing on the motion, (Dkt. #59). Having considered the motion,
the Government's response, the relevant law, and the testimony provided at the
suppression hearing, the Court **DENIES** the motion.

### I. BACKGROUND

On December 7, 2020, police officers responded to calls in Denison, Texas, to
investigate a shooting in which a man and his ten-year-old daughter had been shot—
the child in the head—while driving down W. Crawford Street. At the scene, the
officers located and interviewed the likely intended targets of the shooting, four
individuals, three of whom were juveniles, who had driven down W. Crawford Street
in another car. The four individuals told officers they had been driving to 1217 W.
Crawford Street to fight another group of juveniles but kept driving past the house
when they saw people standing in the yard with firearms. They heard gunshots as
they drove by, and their car was struck, resulting in a flat tire. One of the young men

pointed out 1217 W. Crawford Street to the officers and informed them that the shooter had retreated into the residence.

At that point, Detective John Watt approached the home and made contact with Shiffon Wilson Barber (hereinafter "Wilson"), Barber's wife, who identified herself as the owner of the home, in which Barber also resides. Detective Watt informed Wilson that Denison Police had information that a shooter had gone into her house and asked her for consent to search the property for firearms. Wilson refused. The officer then instructed Wilson to remove her son from the residence as he and other officers would be conducting a protective sweep. He informed her that he was not searching the house, but merely looking to see if anyone was hiding inside.

After beginning the sweep, officers located the defendant, Johnell Lavell Barber, II, who emerged from a bedroom. Once outside, Barber gave the police a false name prior to correctly identifying himself. Officers then determined that Barber had an outstanding warrant, and he was placed under arrest for the warrant and for failure to identify himself.

After arresting Barber, officers once again asked Wilson for consent to search the house. Texas Ranger Brad Oliver spoke with Wilson for several minutes, informing her that a child had been shot, that he was not sure if that child was going to live, and requesting verbal consent to enter the home. Wilson told Ranger Oliver that she refused the earlier request to search the home because she knew Barber had an outstanding warrant. Testimony and video footage from the suppression hearing confirmed that Wilson was upset during this conversation and stated repeatedly that

she did not know what was going on. Ultimately, while speaking with Ranger Oliver, and after law enforcement had been present at her home for at least two hours, she eventually consented to officers searching the house for firearms. During the search, an officer located five firearms in the trunk of a car in the attached garage. The car did not appear to be in working condition, and the trunk was unsecured and partially open. The officers seized the firearms from the trunk of the car, including the semi-automatic rifle described in count one of the indictment against Barber. Barber is charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Barber now moves to suppress the firearm and exclude it from evidence at trial. He argues that the officers' initial entry into the house was an unconstitutional search and not a valid protective sweep, that Wilson's eventual consent to search the house after Barber's arrest was coerced, and that Wilson's consent did not extend to the vehicle parked in the garage because the car did not belong to her.

In response, the Government argues that the officers' initial entry into Wilson and Barber's home was not a search, but a valid protective sweep that was conducted based on information officers had received that the shooter had retreated into the residence as well as surrounding exigent circumstances. Additionally, the Government responds that the totality of the circumstances supports the voluntariness of Wilson's eventual consent because the officers made no threats or promises to her, and she was aware that she had the right to refuse consent. Finally, the Government asserts that Wilson had authority to consent to the search of the vehicle because it was in her garage.

## II. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, the fundamental inquiry under the Fourth Amendment is whether a search was reasonable. *See United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness[.]"). A warrantless entry into a home is presumptively unreasonable, and therefore unconstitutional absent an exception to the warrant requirement. *United States v. Silva*, 865 F.3d 238, 241 (5th Cir. 2017) (citation omitted); *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (quotation omitted). Voluntary consent and exigent circumstances are two such exceptions. *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Silva*, 865 F.3d at 241.

The Government has the burden of establishing that either exigent circumstances existed that justified the warrantless entry or that voluntary consent was given to search the home. *See Silva*, 865 F.3d at 241 ("When a person is subjected to a warrantless search, the government has the burden of proving that the search was justified." (citation omitted)); *see also United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) ("When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional.").

The exclusionary rule operates to suppress evidence obtained in violation of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 231, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Its purpose is to deter Fourth Amendment violations. *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). However, the suppression of evidence will not necessarily result from every Fourth Amendment violation. *See Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated . . . .").

## III. DISCUSSION

The Court will consider in turn each of Barber's three arguments: (1) that the Denison police officers' initial entry into the home was an unconstitutional search and not a protective sweep; (2) that Wilson's consent to search the house after Barber was arrested was coerced; and (3) that Wilson's consent did not extend to the vehicle parked in the garage.

### A. Initial Entry and Protective Sweep

It is undisputed that the Denison Police Department did not have a warrant to search 1217 W. Crawford Street on the night of December 7, 2020. And as explained herein, warrantless searches are presumptively unreasonable under the Fourth Amendment. *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008) (citation omitted). Barber therefore argues that the initial warrantless search of his and

Wilson's home, during which he was found and subsequently arrested, should be suppressed because it was a violation of the Fourth Amendment and significantly tainted the remainder of the investigation. (Dkt. #46 at 4). The Court will first consider the officers' initial entry into the home and then the sweep that followed.

### i. Officers' initial entry

A warrantless entry into a person's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the entry. *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001); *see also United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011) (citing *Jones*, 239 F.3d at 719). Here, Wilson clearly denied consent upon Detective Watt's initial request to search her home for firearms. Probable cause and exigent circumstances therefore were required to justify the officers' initial entry.

Law enforcement officers have probable cause to enter a home if the totality of the circumstances show that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Aguirre*, 664 F.3d at 610 (quoting *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006)). In making the probable cause determination, courts may consider information the officers learned preceding their entry. *Id.* at 610–11 (citation omitted).

The Denison Police had probable cause to believe that evidence concerning the shooting would be found in Wilson and Barber's residence. Police received a phone call from a man who said his daughter had been shot in the head as he drove by Barber's house. They also received several 911 calls from neighbors reporting shots

being fired from the house. And the four young individuals, the likely intended targets of the violence, told police that people had been standing outside the house with guns when they had gone there to fight, that they had been shot at, and that they saw the shooter run into the house. The officers may have had reason to distrust the young individuals given their intent to fight people at Barber's house. However, these witnesses admitted why they were in the area, and the information they provided concerning a shooter located at Barber and Wilson's home was consistent with 911 calls from neighbors and the man who had been shot along with his daughter when they drove by the residence. Thus, the totality of the circumstances show that probable cause existed. *See United States v. Blount*, 123 F.3d 831, 836–37 (5th Cir. 1997) (holding that a neighbor's identification of a drug-trafficking suspect and a home from which the suspect sold narcotics, which was consistent with information that law enforcement had independently derived from their investigation, including a raid on a nearby stash house used by the suspect, provided police with probable cause to believe that illegal narcotics would be found in the suspect's residence).

As for exigent circumstances, "[t]he possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence." *Jones*, 239 F.3d at 720. Officers "may not engage or threaten to engage in conduct that violates the Fourth Amendment in order to create an exigency justifying warrantless entry." *United States v. Daniels*, 930 F.3d 393, 400–01 (5th Cir. 2019) (cleaned up). The Government bears the burden of proving

that exigent circumstances existed, and if reasonable minds could differ, the Court will defer to experienced law enforcement officers' judgment as to the danger of a particular situation. *Blount*, 123 F.3d at 837, 838 ("Our purpose is *not* to examine each act in isolation and inquire whether the officers *could* have acted differently. If 'reasonable minds may differ' the courts should not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." (quoting *United States v. Howard*, 106 F.3d 70, 76 (5th Cir. 1997)). Because exigency "is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *Id.* at 837. The Fifth Circuit thus employs a non-exhaustive five-factor test:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

*Daniels*, 930 F.3d at 401 (citation omitted).

Here, each factor weighs in favor of finding exigency. The situation was urgent. Police had information that one or multiple individuals had access to a firearm inside 1217 W. Crawford Street and that at least one person had been firing shots into the street from the yard of the house. Ensuring such activity did not continue from inside the house once police were on the scene, or after police left the scene to obtain a warrant, was certainly urgent.

8

Ranger Oliver testified that he arrived on the scene at 9:45 p.m., and Sergeant Mullican, another responding officer, estimated that it would have taken officers a couple of hours to get a warrant. Additionally, Detective Watt testified that officers were concerned that there may be other individuals in the house tampering with evidence, creating a reasonable belief that contraband was about to be altered or removed. There was a clear danger to officers and others in the neighborhood that the shooter could have started shooting again, a danger that would have been exacerbated by the extended timing of officers seeking out a warrant after business hours. As in *United States v. Yanez*, in which an unknown gunman fired a weapon from an upstairs bedroom and officers entered the home to halt the shooting and protect the community, "in the time the officers would need to obtain a search warrant, another accomplice hidden in the home could find the weapons and begin shooting again, triggering a renewed threat to public safety." 490 F.Supp.2d 765, 773 (S.D. Tex. 2007) (noting that "[s]uch a situation present[ed] the paradigmatic instance of exigent circumstances, in which the officers reasonably acted with haste to enter the premises and stop a shooting spree they reasonably believed was endangering neighborhood citizens."). Given the time of day, the likely extended amount of time it would have taken to secure a warrant, and the urgency of securing the scene, it was reasonable for officers to move forward without a warrant.

The Fifth Circuit has "consistently held that the presence of a firearm alone does not create an exigency without reason to believe that a suspect is aware of police

surveillance." *Jones*, 239 F.3d at 720. But the situation here goes far beyond the mere presence of a firearm, given that an actual shooting had occurred. And anyone inside the house was almost certainly aware that officers were outside the home, particularly given that there were multiple officers on the scene, that Wilson was outside speaking with officers, and that she drew her son outside the house. Finally, the knowledge that a shooting suspect is likely to attempt to dispose of a gun or escape the scene weighs in favor of finding exigency.

In sum, each of the five factors weighs in favor of concluding that exigent circumstances justified the warrantless entry in this case. And here, there is no evidence to suggest that the officers created an emergency to circumvent the warrant requirement. Because the Denison police officers had probable cause and exigent circumstances existed, their initial entry into Wilson and Barber's home was justified. *See Jones*, 239 F.3d at 719.

### ii. The protective sweep

Having concluded that the officers' initial entry into 1217 W. Crawford Street was justified under the Fourth Amendment, the Court next considers whether the officers' protective sweep was valid. A valid protective sweep is an exception to the general rule against warrantless searches and is a "quick and limited search of premises . . . conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir. 2016).

A protective sweep is justified where there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the . . . scene." *Silva*, 865 F.3d at 241 (quoting *Buie*, 494 U.S. at 334). There are several requirements for a valid protective sweep: (1) police must have entered the home legally and for a legitimate law enforcement purpose; (2) law enforcement must have "a reasonable, articulable suspicion that the area to be swept contains a person posing a danger to those on the scene"; (3) the sweep must be limited to a "cursory inspection of only those spaces where a person may hide"; and (4) officers must end the sweep "once they have dispelled their reasonable suspicion of danger." *Mata*, 517 F.3d at 286 (citing *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004) (en banc), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011)). As with the initial warrantless entry, exigent circumstances, including those in which officers reasonably fear for their safety, where firearms are present, where there is a risk of a suspect escaping, or where there is a fear of destruction of evidence, can justify protective sweeps. *United States v. Mendoza-Burciaga*, 981 F.2d 192, 196 (5th Cir. 1992) (citations omitted). In determining whether a sweep is justified, the Fifth Circuit considers the totality of the circumstances and defers to the "judgment of experienced law enforcement officers concerning the risks in a particular situation." *Silva*, 865 F.3d at 241–42 (citations omitted).

Barber first argues that the initial search by law enforcement officers could not have been a protective sweep because it was not conducted incident to an arrest. (Dkt. #46 at 4) (citing *Mata*, 517 F.3d at 285). This argument is unavailing. To be sure, the fact that a warrantless search occurs incident to an arrest does support the finding of exigent circumstances. *Mendoza-Burciaga*, 981 F.2d at 197 (citing *United States v. Caraza*, 843 F.2d 432, 435 (11th Cir. 1998)). However, the Fifth Circuit has held that an arrest is not an indispensable element of a valid protective sweep. *Gould*, 364 F.3d at 581, 584; *see also United States v. Getachew*, 364 F.App'x. 931, 933 (5th Cir. 2010) ("[The defendant] concedes that his second contention—that the [protective] sweep was unlawful because it was not incident to an arrest—is foreclosed by our precedent."). The requisite potential danger to police officers, or others, that justifies a protective sweep may thus be established by exigent circumstances other than an arrest. *Gould*, 364 F.3d at 584, 591–92 (upholding a protective sweep during which police looked in a bedroom, under a bed, and in closets for a felon who was reportedly planning to kill two local judges, after the officers were admitted to the trailer home by another resident).

Each requirement for a valid protective sweep is met in this case, and the exigent circumstances justify the sweep. First, as established in Section III(A)(i) *supra*, police entered the home legally and for a legitimate law enforcement purpose. Second, law enforcement had a reasonable, articulable suspicion that Wilson's house contained a person or persons posing a danger to those on the scene: shots were fired from outside the house; a man and his daughter were shot; and witnesses observed

the shooter retreat into the house. Officers therefore did not know whether the shooter was armed inside the house or whether others in the home may have had access to a firearm. And police body camera footage shows that Detective Watt told Wilson ahead of the sweep that it was being conducted to ensure officer safety. It was thus reasonable for officers to ensure their safety by conducting a protective sweep.

Third, police body camera footage presented at the hearing confirms the sweep was cursory: officers only looked around the home for places in which a person might be hiding, including in individual rooms, in closets, and under beds. The footage also confirmed that the sweep was limited to less than five minutes. And thus, finally, officers ended the sweep once they dispelled their reasonable suspicion of danger after concluding there was no one left in the house.

Though Wilson expressly denied consent to search the home, the presence of firearms, a reasonable fear for the safety of the officers and others, and concern about the removal or destruction of evidence, taken together, justified the protective sweep without consent in this situation. *See Mendoza-Burciaga*, 981 F.2d at 197 (reasoning that a protective sweep of a home was justified by exigent circumstances because "[i]f others were in the house and armed, the officers would be in great danger"); *Getachew*, 364 F.App'x. at 933 (upholding a protective sweep inside a home when officers were dispatched to a robbery in progress and a witness told officers they had seen armed men inside the house); *cf. United States v. Menchaca-Castruita*, 587 F.3d 283, 286, 295 (5th Cir. 2009) (holding that a warrantless sweep of a home was unreasonable due to a lack of exigent circumstances because there was no reason to

believe that the suspect was inside the home). Given the totality of the circumstances, the Denison officers' sweep that followed their initial warrantless entry into Wilson and Barber's home was a constitutional protective sweep.

The Government has thus met its burden to show that the officers' initial entry into the home and the ensuing protective sweep were justified.

### B. Voluntariness of Wilson's Consent Following Barber's Arrest

Next, the Court must consider whether the eventual post-arrest consent given by Wilson to search the home constituted valid, voluntary consent. A well-established exception to the warrant requirement for searches is consent. *Bustamonte*, 412 U.S. at 219. However, this consent must be voluntarily given and not the product of coercion, express or implied, or duress. *Id.* at 227. It is the Government's burden to prove, by a preponderance of the evidence, that consent was voluntarily and freely given. *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997) (citations omitted).

Whether consent was "voluntary" is a question of fact to be determined from the totality of the circumstances. *Bustamonte*, 412 U.S. at 227. The relevant factors include: (1) the voluntariness of Wilson's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of Wilson's cooperation with the police; (4) Wilson's awareness of her right to refuse to consent; (5) Wilson's education and intelligence; and (6) Wilson's belief that no incriminating evidence would be found. *Tompkins*, 130 F.3d at 121 (quoting *United States v. Olivier-Becerril*, 861 F.2d 424,

426 (5th Cir. 1988)). While all six factors are relevant, no single factor is dispositive. *Id.*

Barber argues that Wilson's consent to search the home, given after Barber had been arrested, was coerced and is therefore invalid. Barber asserts that the prior sweep of the home without Wilson's consent, Wilson witnessing the arrest of her husband, and officers pressuring Wilson by telling her that a child had been shot constituted "subtle coercion." (Dkt. #46 at 5). The Government denies that these facts indicate coercion and responds that Wilson stated that she only withheld consent on the initial request because she knew there was an outstanding arrest warrant for Barber. (Dkt. #48 at 6). Given the totality of the circumstances, the Court finds that Wilson voluntarily consented to the search of her home.

The record shows that Ranger Oliver spoke with Wilson outside of her home for several minutes before she consented to the search. Police body camera footage of the conversation further demonstrates that Wilson was hesitant and visibly upset, which officers also testified to at the suppression hearing. But Wilson never denied consent to the search during this conversation—and Ranger Oliver testified that if she had said no, he would have stopped discussing the potential search with her.

Further, the officers' actions in this case are distinguishable from the type of police conduct that has been recognized as coercive in the context of obtaining consent to search. *See Tompkins*, 130 F.3d at 122 (describing coercive police conduct to include making an "overt display of authority," using threats or violence, or placing the individual in handcuffs); *see also United States v. Zavala*, 459 F.App'x. 429, 433–35

(5th Cir. 2012) (holding that a defendant did not give voluntary consent at a traffic stop for an officer to search his car because the officer used coercive police behavior, including obtaining consent while the defendant was sitting inside a police car and never advising the defendant that he was free to deny consent). While Wilson had witnessed the arrest of her husband, this does not constitute a coercive police procedure, by itself, that would invalidate her consent to allow officers to search her home for firearms. *See United States v. Gonzalez-Quesada*, 618 F.App'x. 237, 239 (5th Cir. 2015) (holding that the arrest of a spouse did not constitute coercion that invalidated consent as involuntary when weighed against other factors). Additionally, though Ranger Oliver told Wilson that a child had been shot, such a statement does not rise to coercion, as he was merely stating a fact that led to the investigation.

Barber's argument that Wilson only reluctantly consented to the search because police had already searched the home once without consent similarly falls flat—especially given Wilson's separate statement to Ranger Oliver that she only withheld consent prior to the sweep because she knew about Barber's outstanding warrant. Ranger Oliver testified, and the footage confirmed, that he explained to Wilson that she could ask the officers to leave her house at any point during the search. Ranger Oliver also informed Wilson that she did not have to give the officers permission to search the residence, which she said she knew. The fact that Wilson had denied consent earlier in the night further confirms that she knew she had the right to refuse consent.

16

As to the remaining *Tompkins* factors, Wilson was never in custody, nor were she or her children ever threatened with arrest if she did not provide consent. Wilson had also been fairly cooperative with the police up to that point, and there is no reason to believe that her education or level of intelligence weigh in favor of invalidating her consent.

Based on the totality of the circumstances, Wilson voluntarily consented to police officers searching her home for firearms. Because her consent was voluntarily given, the officers' search of 1217 W. Crawford Street on the night of December 7, 2020, is validly excepted from the Fourth Amendment warrant requirement.

## C. Consent to Search the Vehicle

Finally, Barber argues that the firearm found in the trunk of the car in the garage should be suppressed because Wilson did not have proper legal authority to consent to a search of the vehicle. In his motion, Barber contends that the adult son he shares with Wilson, Johnell Barber, III, is the owner of the car, and thus Wilson could not give valid consent to search the trunk of that vehicle on his behalf. (Dkt. #46 at 6). However, Johnell Barber, III was sixteen years old at the time. And at the suppression hearing, Barber conceded that it is unclear who the registered owner of the car is and that the car may belong to someone who does not reside in his and Wilson's house. The Government responds that Barber's claim is without merit because as owner of the house and as Johnell Barber, III's mother, Wilson clearly had authority over the vehicle parked in her attached garage. (Dkt. #48 at 7). The Court concludes that the officers' search of the vehicle, during which the officers located the

firearm identified in the indictment, was constitutional under the Fourth Amendment for multiple reasons.

First, Wilson had common authority over the vehicle so that she was able to provide valid consent to a search of that property. Law enforcement officers may conduct searches based on voluntary consent either from the individual whose property is being searched or from a third party who possesses common authority over the property. *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Common authority rests on "mutual use of the property by persons generally having joint access or control." *Id.* at 171 n.7. The burden of establishing common authority rests on the Government. *Id.* at 171. Consent may also be valid if officers reasonably, though erroneously, believed that the consenting third party had the authority to consent to a search of the property. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

In this case, the Government has met its burden of establishing that Wilson had common authority over the vehicle. According to testimony from officers at the suppression hearing, the car was clearly not in working condition—it had expired registration tags and flat tires. The car was parked inside the attached, closed garage of Wilson's house, and it was obviously not going anywhere. Additionally, as the defendant has since conceded, the registered owner of the vehicle was not anybody who lived in the house. Therefore, Wilson had sufficient "joint access or control" over the vehicle—indeed, if anyone had authority over the vehicle, it was Wilson.

Further, the evidence reveals that Johnell Barber, III did not tell officers that the vehicle belonged to him until after the search was complete, and the officers had no reason prior to completion of the search to believe that the car belonged to Johnell Barber, III. *See United States v. Freeman*, 482 F.3d 829, 834 (5th Cir. 2007) (finding that an officer was reasonable for believing he had consent to look in a defendant's backpack after the defendant's co-conspirator had given the officer permission to search their room because the officer "could not have known the backpack belonged to [the defendant]"); *cf. United States v. Jaras*, 86 F.3d 383, 386 (5th Cir. 1996) (holding that a police officer did not have consent to search the contents of a suitcase located within a car because the driver, who consented to the search, expressly told the officer that the suitcase did not belong to him). And because he was only sixteen years old at the time of the search, even if the vehicle belonged to him, it was reasonable for the officers to believe that his mother, Wilson, had the authority to consent to a search of the vehicle. The Court concludes that Wilson did have the authority to consent to a search of the vehicle kept inside her garage.

Second, the officers' search of the car was constitutional because it was reasonable to conclude that Wilson's general consent to search her home for firearms extended to the partially open trunk of the vehicle in her garage. A person consenting to a search retains the right to impose express limitations on the scope of that consent. *Florida v. Jimeno*, 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). However, if the consenting person does not impose express limits on the search, "the standard for measuring the scope . . . is that of 'objective' reasonableness-what would

19

the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251 (citations omitted). The factual circumstances are highly relevant in determining what a reasonable person would have believed the scope of the consent was. *United States v. Mendoza-Gonzalez,* 318 F.3d 663, 667 (5th Cir. 2003) (citation omitted); *see also*, *e.g.*, *United States v. Dominguez*, 103 F.3d 126, 1996 WL 731574, *1 (5th Cir. 1996) (per curiam) (holding that it was reasonable for officers to conclude that they had consent to remove a screw and search a hidden attic after they were given consent to search a home).

The scope of a search is generally defined by its expressed object. *Jimeno*, 500 U.S. at 251–52 (holding that an officer did not exceed the scope of a defendant's consent to search his vehicle when the officer easily opened a brown paper bag located on the floorboard of the car and discovered cocaine, as it was objectively reasonable for the officer to conclude that general consent to search the car for drugs included consent to search containers in that car that might bear drugs). Wilson gave law enforcement officers general consent to search her home for firearms. Her home includes the attached garage. Inside the garage was a non-operative vehicle with an unsecured, partially open trunk. All the officers had to do was manually lift the trunk hood to look inside, where they saw a lump under a mat. Therefore, the officers reasonably believed they had general consent to look in the trunk of the car for firearms because it was a place where firearms might well be found. Additionally, Wilson was in the home for the entirety of the search, and she never withdrew her

consent or limited its scope. This bolsters the reasonableness of the officers' belief that Wilson's consent extended to the vehicle.

In sum, the search of the car parked in the garage of 1217 W. Crawford Street was constitutionally valid because Wilson had common authority over the vehicle and it was reasonable for the officers to conclude that the scope of Wilson's general consent to search her home extended to the car.

## IV. CONCLUSION

The Government has met its burden of establishing that officers' initial entry into Wilson's home was justified, the protective sweep was valid, Wilson's consent to search the house after Barber was arrested was voluntary, and Wilson's consent extended to the vehicle parked in the garage. Barber's challenges on these grounds thus fail, and the firearm that the officers found in the trunk of the vehicle should not be suppressed.

It is therefore **ORDERED** that Defendant Johnell Lavell Barber, II's Motion to Suppress Evidence, (Dkt. #46), is hereby **DENIED**.

**So ORDERED and SIGNED this 20th day of July, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE